# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

TJAY B. MILLER,

    *Defendant*.

Case No. 16-10106-02-EFM

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Objection Number 1 to the Presentence Investigation Report ("PSR") prepared in this case (Doc. 43). Defendant Tjay Miller objects to Paragraph 34 of the PSR, arguing that his 2012 conviction in Kansas state court for aggravated battery should not have been classified as a "crime of violence." The Court is issuing this memorandum and order prior to Miller's sentencing hearing scheduled for June 30, 2017. Because this Court has previously held that Kansas aggravated battery qualifies as a crime of violence, the Court denies Miller's objection.

### I. Background

On February 10, 2017, Miller pleaded guilty to possession of a firearm as a user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Before Miller's sentencing, the U.S. Probation Office prepared a PSR using the 2016 Guidelines Manual. The guideline for § 922(g)

offenses is found in § 2K2.1 of the Guidelines.  That section provides that an offense involving the possession of a firearm after sustaining at least one felony conviction of either a "crime of violence" or a "controlled substance offense" has a base offense level of 20.[1]  But if the offender has not previously been convicted of a "crime of violence," and is instead merely a "prohibited person at the time the defendant committed the instant offense," then the base offense level would only be 14.[2]

In 2012, Miller pleaded guilty in a Kansas state court to one count of burglary, one count of aggravated battery, and one count of misdemeanor battery.  Count II of the Amended Information alleged:

> on or about the 23rd day of October 2011, . . . one TJAY B. MILLER did then and there unlawfully and knowingly cause bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement, or death can be inflicted.

The Probation Office concluded that Miller's conviction for aggravated battery qualified as a "crime of violence," and applied the base offense level of 20 accordingly.  The Probation Office explained that the "crime of violence" determination was based off of this Court's earlier decision in *United States v. Williams*.[3]

Miller objects to this determination.  He argues that this Court's "ruling in *Williams* was wrongly decided."  According to Miller, his conviction for aggravated battery is not a "crime of violence" and his base offense level should only be 14.  The Court disagrees.

---

[1] U.S.S.G. § 2K2.1(a)(4)(A).

[2] U.S.S.G. § 2K2.1(a)(6).

[3] 2017 WL 1332721 (D. Kan. 2017).

## II.     Discussion

The issue currently before this Court is whether aggravated battery, as defined in K.S.A. § 21-5413, qualifies as a "crime of violence," thus warranting a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A). The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause").[4]

Although "physical force" is not defined by the Guidelines, the U.S. Supreme Court held in *Johnson v. United States*[5] that "physical force" means "violent force," which is a "force capable of causing physical pain or injury to another person."[6] Mere offensive touching will not suffice.[7] Accordingly, Miller's prior conviction would only qualify as a crime of violence if the statute requires the use, attempted use, or threatened use of violent, physical force against the person of another.

The parties agree that Miller's aggravated battery conviction was under K.S.A. § 21-5413(b)(1)(B), which was defined at the time as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or

---

[4] U.S.S.G. § 4B1.2(a)(1); *see also* U.S.S.G. § 2K2.1 App. N. 1 (providing that "crime of violence," as used in § 2K2.1 "has the meaning given that term in § 4B1.2(a) . . . .").
    The term "crime of violence" is also defined as any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2). However, the parties' arguments only implicate the elements clause, so the Court will confine its analysis accordingly.

[5] 559 U.S. 133 (2010).

[6] *Id.* at 134.

[7] *See id.* at 139–42.

death can be inflicted." This Court held in *Williams* that subsection (b)(1)(B) is a divisible statute "because it sets out elements of the offense in the alternative, creating two distinct offenses."[8] First, the statute criminalizes "knowingly causing bodily harm to another person with a deadly weapon."[9] Second, it criminalizes "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."[10] Accordingly, the Court must employ the modified categorical approach to determine which of these alternative offenses formed the basis of Miller's prior conviction.[11]

The Amended Information relating to Miller's conviction clearly shows that he was charged with the second alternative—knowingly causing bodily harm to another person "in any manner whereby great bodily harm, disfigurement or death can be inflicted."[12] Thus, the Court must now determine whether that offense constitutes a "crime of violence" under the Guidelines' elements clause. Put another way, the issue becomes whether the offense "has as an element the use, attempted use, or threatened use" of violent, physical force against the person of another.[13]

---

[8] *Williams*, 2017 WL 1332721, at *2; *see also State v. Murdock*, 286 Kan. 661, 187 P.3d 1267, 1273 (2008) (acknowledging that aggravated battery with a deadly weapon or aggravated battery in a manner whereby great bodily harm could be inflicted are separate offenses).

[9] K.S.A. § 21-5413(b)(1)(B).

[10] K.S.A. § 21-5413(b)(1)(B).

[11] *See United States v. Antonio-Agusta*, 672 F.3d 1209, 1210 (10th Cir. 2012) (providing that in cases where the statute is ambiguous "a court can look beyond the statute to certain records of the prior proceeding, such as to charging documents, the judgment, and the terms of a plea agreement" to determine whether the prior conviction warrants an enhancement); *see also United States v. Venzor-Granillo*, 668 F.3d 1224, 1229 (10th Cir. 2012) (explaining that if the conviction is evaluated under the Guidelines' elements clause, the modified categorical approach has a narrow application; judicial records may be consulted "only 'to determine which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.' ") (quoting *United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008)).

[12] K.S.A. § 21-5413(b)(1)(B). For the purposes of this Order, the phrase "aggravated battery" will refer to the second alternative of § (b)(1)(B)—"knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."

[13] U.S.S.G. § 4B1.2(a)(1); *Johnson*, 133 U.S. at 134.

Miller argues that an offense can only qualify as a "crime of violence" under the elements clause by having an element of "active, intentional employment of physical force."[14] But according to Miller, the Kansas aggravated battery statute focuses "on the result of the defendant's conduct, bodily harm, rather than the manner in which the harm was caused." Additionally, "the statute does not even require actual physical contact between the defendant and the victim." In other words, aggravated battery does not require the application, threatened application, or attempted application of physical force whatsoever. Thus, he argues, aggravated battery is categorically not a crime of violence.

**A.**   ***United States v. Williams***

In *Williams*, this Court held that "both aggravated battery offenses contained in K.S.A. § 21-5413(b)(1)(B) constitute crimes of violence."[15] First, "[k]nowingly causing bodily harm to another person with a deadly weapon has as an element the use and threatened use of physical force."[16] And second, "knowingly causing bodily harm in any manner whereby great bodily harm, disfigurement or death can be inflicted has as an element the use and threatened use of physical force."[17]

Regarding the second conclusion, that Miller now contests, this Court wrote:

> Clearly, if an offender causes another person bodily harm, in a manner "whereby great bodily harm, disfigurement or death can be inflicted" he has used "force capable of causing physical pain or injury to another person." The Tenth Circuit agrees. "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it

---

[14] *United States v. Zuniga-Soto*, 527 F.3d 1110, 1113 (10th Cir. 2008).

[15] *Williams*, 2017 WL 1332721, at *10.

[16] *Id.*

[17] *Id.*

seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.' "[18]

This Court also looked to similar cases outside of the Tenth Circuit, including *United States v. Flores-Gallo*.[19] In *Flores-Gallo*, the Fifth Circuit interpreted a previous version of Kansas's aggravated battery statute, and addressed a provision with nearly identical language to the current provision at issue in *Williams* and this present case. This Court quoted the following language from *Flores-Gallo*:

> The statute requires that the harm must be conducted in a "manner whereby great bodily harm, disfigurement or death can be inflicted." So, in order to be convicted under the statute the defendant must with ill will or hostility intentionally use force that is more than mere touching and has the capability of causing significant injury.[20]

Accordingly, the Fifth Circuit held that "the hostile intent and force used in conjunction with the risk of significant injury creates an offense which has as an element at least the threatened use of force that is capable of causing physical pain or injury to another person as contemplated by *Johnson*."[21]

Applying *Treto-Martinez* and *Flores-Gallo*, this Court concluded that "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted" has as an element the use and threatened use of physical force.[22]

---

[18] *Id.* at *9 (quoting *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005)).

[19] 625 F.3d 819 (5th Cir. 2010).

[20] *Id.* at 823.

[21] *Id.* at 824.

[22] *Williams*, 2017 WL 1332721, at *10.

## B. Aggravated Battery Requires the "Use" of Force

Now, Miller raises one argument that this Court did not directly address in *Williams*. He argues that aggravated battery does not have as an element the attempted, threatened, or actual "use" of physical force because the statute "merely looks to the result of the offense: bodily harm." According to Miller, an offender can be convicted of Kansas aggravated battery for simply "causing" an injury; the statute does not require the offender to "use" or "apply" force to the victim. Thus, his argument goes, "bodily harm can be caused without ever employing physical force, much less the degree of force required to find an offense to be a crime of violence under § 4B1.2: cutting [brake] lines or poisoning beverages."

While the Court did not specifically address this argument in *Williams*, the Court directly addressed and rejected this argument in *United States v. Corral-Garcia*[23] while analyzing the Kansas aggravated assault statute.[24] In *Corral-Garcia*, this Court concluded that "[a] statute that focuses on whether an injury resulted can still require the use or threatened use of physical force."[25] "[T]he correct inquiry is not whether the statute *focuses* on whether an injury resulted, but whether one could violate the statute without [applying, or] threatening to apply physical force to the victim."[26]

Put another way, the plain language of the statute is merely the starting point. The Court must then look to state court decisions in order to determine whether the statute—as it is actually

---

[23] 2017 WL 1437330 (D. Kan. 2017).

[24] *See* K.S.A. § 21-3410 (2007) (current version at K.S.A. § 21-5412(b)(1)).

[25] *Id.* at *8.

[26] *Id.* (emphasis in original).

applied—can be violated without the application of force.[27] By doing so, the Tenth Circuit has, on numerous occasions, determined that a statute focusing on whether an injury resulted still required the use or threatened use of physical force.[28]

Here, the statute criminalizes "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."[29] At first blush, it appears that the statute could theoretically support a conviction without the direct application of force from the defendant to the victim.[30] According to Miller, "bodily harm can be caused without ever employing physical force." For example, he posits that aggravated battery encompasses cutting brake lines or poisoning beverages.

However, Miller failed to cite even a single Kansas case in which a defendant was convicted of aggravated battery without directly applying force to the victim. The Court was also unable to locate such a case. "As a general rule, showing that a crime does not meet a generic definition requires more than 'application of legal imagination to a state statute's language.' "[31] "Thus, a defendant must ordinarily show a 'realistic probability' that the state

---

[27] *See United States v. Perez-Vargas*, 414 F.3d 1282, 1285–86 (10th Cir. 2005) ("Turning first to the language of the Colorado statute that defines third degree assault, we note that while it is likely most third degree assaults will involve the use or threatened use of physical force . . . the language of the statute allows for other possibilities . . . . Since the language of the statute is broad, we turn to Colorado courts for interpretive assistance. Unfortunately, we have found no Colorado case law definitively holding that the third degree assault statute necessarily requires the application of force.").

[28] *See, e.g.*, *United States v. Mitchell*, 653 F. App'x 639 (10th Cir. 2016); *United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016); *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005); *United States v. Ortega-Garcia*, 12 F. App'x 897 (10th Cir. 2001).

[29] K.S.A. § 21-5413(b)(1)(B).

[30] However, that is not to say that a statute must require the direct application of force from the defendant to the victim in order for the statute to have as an element the "use" of force.

[31] *United States v. Castillo*, 811 F.3d 342, 349 (10th Cir. 2015) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

would apply its statute to the proposed conduct, and must do so by directing the court to 'other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.' "[32] Miller has not done so here.

In practice, Kansas aggravated battery can only be committed by a defendant who directly applies force to the victim. According to the Kansas Supreme Court, "bodily harm" is defined as "any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner."[33] This language clearly indicates that the statute does not encompass "situations where bodily harm can be caused without physical contact" as Miller suggests. Rather, the statute only encompasses situations in which the defendant *touched* the victim *with physical force*.[34] Thus, contrary to Miller's assertions, Kansas aggravated battery does require the "use" or application of force.[35]

Having rejected Miller's sole argument, the Court has no other reason to reconsider its decision in *Williams*. As this Court held in *Williams*, "knowingly causing bodily harm in any manner whereby great bodily harm, disfigurement or death can be inflicted has as an element the

---

[32] *Id.*

[33] *State v. Whitaker*, 260 Kan. 85, 917 P.2d 859, 865 (1996) (quoting *State v. Dubish*, 234 Kan. 708, 675 P.2d 877 (1984)); *see also State v. Johnson*, 46 Kan. App. 2d 870, 265 P.3d 585, 593 (2011).

[34] *See id.*

[35] The Government alternatively argues that under *United States v. Castleman*, 134 S. Ct. 1405 (2014), an *indirect* application of physical force (such as by poisoning one's drink) constitutes a "use of physical force," and that a bodily injury necessarily results from the use of physical force. In *Castleman*, the Supreme Court held that, in the context of "misdemeanor crimes of domestic violence" (18 U.S.C. § 922(g)(9)), the "use of physical force" includes the indirect application of force. *Id.* at 1415. While many Circuit Courts of Appeal have applied *Castleman* to the Guidelines' elements clause, neither the Tenth Circuit nor this Court have yet taken a position on the matter. Because the Court concludes that Kansas aggravated battery requires the *direct* application of force, it is not necessary for the Court to decide whether offenses encompassing the *indirect* application of force still qualify as a "crime of violence" under § 4B1.2(a)(1).

use and threatened use of physical force."[36]  Therefore, Kansas aggravated battery is a "crime of violence" under the Guidelines.

### III.    Conclusion

In *Williams*, this Court held that aggravated battery, as defined in K.S.A. § 21-5413(b)(1)(B) constitutes a crime of violence.  Here, Miller raised an issue the Court did not specifically address in *Williams*: whether an offender could be convicted of aggravated battery for simply "causing" an injury, without "using" or applying force to the victim.  Because the Court concluded that aggravated battery cannot be committed without "using" or applying force, this Court remains convinced of the soundness of its prior decision.  Accordingly, the United States Probation Office properly classified Miller's 2012 Kansas conviction for aggravated battery as a "crime of violence."

**IT IS THEREFORE ORDERED** that Defendant's Objection No. 1 to the Presentence Investigation Report (Doc. 43) is **OVERRULED**.

**IT IS SO ORDERED**.

Dated this 15th day of June, 2017.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[36] *Williams*, 2017 WL 1332721, at *10.